## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DONALD FRIEDMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-169 (RWR)** |
| | ) | **Electronic Case Filing** |
| **UNITED STATES NONLETHAL** | ) | |
| **WEAPONS DIRECTORATE et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, United States Nonlethal Weapons Directorate ("USNWD") and United States Marine Corps ("USMC"), by and through the U.S. Attorney for the District of Columbia, respectfully submit their motion for summary judgment on the grounds that there are no material facts in dispute regarding the exemption claimed by Defendants.  In support of this motion, Defendants submit the accompanying Memorandum in Support of Motion for Summary Judgment; Defendants' Statement of Material Facts Not In Dispute; and the attached Declaration of Dr. Garrett D. Polhamus, Chief of the Air Force Laboratory, Directed Energy Bioeffects Division (AFRL/HED), at Brooks City-Base, Texas ("Polhamus Decl.") (attached as Exhibit 2).

Plaintiff should take notice that any factual assertions contained in the accompanying affidavits and other attachments in support of Defendants' motion will be accepted by the Court as true unless the Plaintiff submits his own affidavit or other documentary evidence contradicting

the assertions in Defendants' attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992);

see also Local Rule 7(h)[1] and Fed. R. Civ. P. 56(e).  Fed. R. Civ. P. 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Dated: August 18, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

 /s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

---

[1]   Requiring that oppositions to motions for summary judgment "shall" be accompanied by a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  LCvR 7(h).

          /s/
          JANE M. LYONS, D.C. BAR # 451737
          Assistant United States Attorney
          555 4th Street, N.W. - Room E4822
          Washington, D.C.  20530
          (202) 514-7161

          Counsel for Defendants

**Of Counsel:**
Nicholas Doukas, Capt., USAF
311 HSW/JA
8010 Chennault Path
Brooks City-Base, TX 78235

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DONALD FRIEDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-169 (RWR) |
| | ) | Electronic Case Filing |
| UNITED STATES NONLETHAL | ) | |
| WEAPONS DIRECTORATE et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case involves the duty of Defendants United States Nonlethal Weapons Directorate ("USNLWD") and United States Marine Corps ("USMC"), under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, to process a request made by Plaintiff for information about the Active Denial System ("ADS") and Active Denial Technology ("ADT"). These files encompass 471 photographs and 3 documents which Defendants have extensively reviewed and released to Plaintiff. In short, as of the filing of this motion, Defendants have made available to Plaintiff all of the non-exempt, responsive materials. Defendants have invoked Exemption 1 to withhold classified information for legally permissible reasons as reflected in the Declaration of Dr. Garrett D. Polhamus, Chief of the Air Force Research Laboratory, Directed Energy Bioeffects Division (AFRL/HED) ("Polhamus Decl."). Accordingly, because Defendants have fully performed their statutory duty and there are no genuine issues of material fact, Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## I. **FACTUAL BACKGROUND**

This memorandum addresses the November 26, 2005 (Ex. A to Polhamus Decl.), February 3, 2006 (Ex. F to Polhamus Decl.), and April 24, 2006 (Ex. J to Polhamus Decl.) Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), requests sent by Donald Friedman ("Plaintiff" or "Friedman") which were forwarded to AFRL/HED.  See Polhamus Decl. at ¶¶ 7,15, and 22.  The November 26, 2005 request sought  "copies of all available written descriptions of and color photos of any permanent or temporary marks, injuries, wounds, blemishes, burns, etc. which were, could have been, or could be left on (or inflicted upon) any person due to any use or testing on them of any narrow-beam (under 1" at point of impact) version of any millimeter-wave weapon (Active Denial Technology and/or Active Denial System)."  Defendant's Statement of Material Facts Not In Dispute ("DSMF") at ¶ 2; Ex. A to Polhamus Decl.  The February 3, 2006  request sought "color photos of any permanent or temporary marks, injuries, wounds, blemishes, burns, etc. which were, could have been, or could be left on (or inflected upon) any <u>animal</u> due to any use or testing on them of any narrow-beam (under 1" in diameter at point of impact) version of any millimeter-wave energy weapon (Active Denial Technology, Active Denial System, etc.)."  DSMF at ¶ 12; Ex. F to Polhamus Decl. (emphasis in original).  Plaintiff's third request (April 24, 2006) sought information related to program(s) described at the webpage at <u>http://www.sandia.gov/news-center/news-releases/2005/def-nonprolif-sec/active-denial.html</u>. and "all weapon-effect related research notes, bench notes, etc" regarding human effects from "very-narrow-beam ADT/ADS." DSMF at ¶ 18;

Ex. J to Polhamus Decl.  With regard to each of these requests, Defendants searched all applicable computer directories and paper files.  See Polhamus Decl. at ¶¶ 9-11, 17, 22.[2]

Defendants processed each of the requests, Polhamus Decl. at ¶¶ 8-12, 17-19, 22-24, and released the following items to Plaintiff: (1) twelve (12) photographs on April 19, 2006 (response to first request (Id. at ¶ 13); (2) 459 photographs on July 24, 2006 (Id. at ¶ 20); and (3) three (3) documents in full that were responsive to Plaintiff's three FOIA requests (Id. at ¶ 25).  Defendants properly asserted FOIA Exemption 1 to withhold information, as fully explained in Section III. C., infra.  In short, Defendants have processed Plaintiff's FOIA requests expeditiously and appropriately in all respects, and are entitled to summary judgment in their favor.

## II.     LEGAL STANDARDS

### A.     Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

---

[2]  Although a party may not make or modify a FOIA request during litigation, Defendants are addressing all of Plaintiff's FOIA requests herein in the interests of resolving this matter efficiently.  E.g., Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992) (per curiam); Pray v. Department of Justice, 902 F. Supp. 1, 2-3 (D.D.C. 1995); Morre v. Aspin, 916 F. Supp. 32, 36 (D.D.C. 1996).  Defendants further note that although no fees have been requested from Plaintiff in connection with the Defendants' past searches for responsive documents or copying documents, Defendants have never received a request for a fee waiver from Plaintiff, and Defendants reserve the right to request fees associated with any request from Plaintiff if either additional disclosures are made for the requests discussed herein or any future requests.  See 5 U.S.C. § 552(a)(4)(A)(I) (providing for the application of fees); Pollack v. Department of Justice, 49 F.3d 115, 119 (4th Cir.) (even "[t]he constructive exhaustion provision [does] not relieve [the requester] . . . of his statutory obligation to pay any and all fees which the agency is authorized to collect."), cert. denied, 516 U.S. 843 (1995); Trueblood v. U.S. Dep't of Treasury, 943 F.Supp. 64, 68 (D.D.C. 1996) ("Regardless of whether the plaintiff filed suit before or after receiving a request for payment, the plaintiff has an obligation to pay for the reasonable copying and search fees assessed by the defendant.").

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of

evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co.,

Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the Plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In Anderson, the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(the non-moving party is "required to provide evidence that would permit a reasonable jury to

find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[1] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. Federal Trade Comm'n, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dep't of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

### B.    Standards Governing the Search for Responsive Records

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health,, 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material. Id. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case." Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'"  Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985), citing National Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978).  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search.  Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence

7

by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383.  A requester may

not rebut agency affidavits with purely speculative allegations.  See Carney, 19 F.3d at 813;

SafeCard, 926 F.2d at 1200; Maynard, 986 F.2d at 559-560.

　　　　The fundamental question is not "whether there might exist any other documents

responsive to the request, but rather whether the search for those documents was adequate."

Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of

Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

　　　　**C.　　　Standards for A Proper Vaughn Index**

　　　　In moving for summary judgment in a FOIA case, agencies must establish a proper basis

for their withholding of responsive documents.  "In response to this special aspect of summary

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA Plaintiffs."  Judicial Watch v. U.S. Dep't of Health

& Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits

(singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v.

Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974).  There is

no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the

Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C.

1997).  "The materials provided by the agency may take any form so long as they give the

reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail &

Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also Keys v. U.S. Dep't of

Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d

Cir. 1988).[2]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See  Citizens Commission on Human Rights v.

FDA, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim

and the descriptions of withheld material need not be so detailed as to reveal that which the

agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as

to whether the material is actually exempt under FOIA."  Founding Church of Scientology v.

Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

### D.    Legal Standards for Applicable Exemptions to Release under FOIA

FOIA Exemption 1 applies to matters "specifically authorized under criteria established

by an Executive order to be kept secret in the interest of national defense or foreign policy" and

"are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  The

benchmark for determining whether an agency has properly relied on exemption 1 is set forth in

this Court's decision in Halperin v. CIA, 629 F.2d 144 (D.C. Cir. 1980).   Summary judgment for

the agency is appropriate if its declarations are reasonably specific and are not called into

question by contradictory evidence or evidence of bad faith.  Id. at 148.  Ultimately, it is the

---

[2] "All that is required, and that is the least that is required, is that the requester and the trial judge
be able to derive from the index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure." Id. "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on
the nature of the document at issue and the particular exemption asserted." Information
Acquisition Corp. v. Dep't of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

agency withholding information pursuant to exemption 1, not the FOIA requester, which bears the responsibility for determining whether harm to national security may occur, so the Court should accord substantial weight to the agency's expert judgment.  See id. at 147-48.

Exemption 1 of the FOIA allows for the withholding of material which are:

> (A)  specifically authorized under criteria established by an Executive
>
> order to be kept secret in the interest of national defense or foreign policy
>
> and
>
> (B)  are in fact properly classified pursuant to such Executive order . . . .

5 U.S.C. § 552(b)(1).  The executive order in effect at the time the classification decisions were made in this case was Executive Order ("EO") 12958, as amended, 68 Fed. Reg. 15,315 (March 28, 2003), reprinted in 50 U.S.C.A. § 435 note (West Supp. 2003) and summarized in FOIA Post (posted April 11 2003).  Polhamus Decl. ¶ 26.

For information to be properly classified and thus to be properly withheld from disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O. 12958, § 1.2:

> (1)  an original classification authority is classifying the
> information;
>
> (2)  the information is owned by, produced by or for, or is under
> the control of the United States Government;
>
> (3)  the information falls within one or more of the categories of
> information in § 1.5; and
>
> (4)  the original classification authority determines that the
> unauthorized disclosure of the information reasonably could be
> expected to result in damage to the national security and the

10

> original classification authority is able to identify or describe the
> damage.

In addition to the substantive requirements of E.O. 12958, certain procedural and administrative

requirements of E.O. 12958 must be followed before information can be considered to be

properly classified, including proper identification and marking of documents.  These

requirements are:

> (a)  each document was marked as required and stamped with the proper classification designation;[3]
>
> (b)  each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 12958 § 1.6(d), and which portions are unclassified;[4]
>
> (c)  the prohibitions and limitations on classification specified in E.O. 12958 § 1.8, were adhered to;
>
> (d)  the declassification policies set forth in E.O. 12958 §§ 3.2 were followed; and
>
> (e)  any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

In determining whether an agency has fully discharged its obligations under FOIA, a district

court reviews an agency's determinations de novo.  5 U.S.C. § 552(a)(4)(B); Steinberg v. U.S.

Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  In reviewing classification determinations

under Exemption 1, however,  this Court repeatedly has stressed that "substantial weight" must

be accorded agency affidavits concerning the classified status of the records at issue.  See, e.g.,

Krikorian v. Dep't of State, 984 F.2d 461, 464 (D.C. Cir. 1993); Military Audit Project v. Casey,

---

[3]  E.O. 12958 §§ 1.7(a)(1)-(5).

[4]  E.O. 12958 § 1.7(a)(5)(c).

656 F.2d 724, 738 (D.C. Cir. 1981).  As the United States Court of Appeals for the District of

Columbia Circuit has stated:  "Judges . . . lack the necessary expertise to second-guess such

national security opinions in the typical national security case."  Halperin, 629 F.2d at 148.  Clear

precedent has established that courts are reluctant to substitute their own judgment in place of the

agency's in the areas of national defense and foreign relations.  See Miller, 779 F.2d at 1387; see

also McDonnell v. United States, 4 F.2d 1227, 1242-44 (3d Cir. 1993); Maynard v. CIA, 986

F.2d at 556 n.9; Bowers v. United States Dep't of Justice, 930 F.2d 350, 357 (4th Cir. 1991);

Doherty v. United States Dep't of Justice, 775 F.2d 49, 52 (2d Cir. 1985).  "[C]ourts must

'recognize that the Executive departments responsible for national defense and foreign policy

matters have unique insights into what adverse affects [sic] might occur as a result of public

disclosure of a particular classified record.'"  Salisbury v. United States, 690 F.2d 966, 970 (D. C.

Cir. 1982) (quoting S. Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).  Thus, the D.C.

Circuit has held that courts must give "substantial weight" and "utmost deference," while

conducting a de novo review of agency determinations, that information requested under FOIA is

classified and barred from disclosure.  Id. at 970 ("[C]ourts are to 'accord substantial weight to

an agency's affidavit concerning the details of the classified status of the disputed record.'").

     To prevail at summary judgment, the agency must demonstrate that 1) the agency

followed proper classification procedures and 2) that, by its description, the document logically

falls within the claimed exemption.  Salisbury, 690 F.2d at 970-72; Military Audit Project, 656

F.2d at 737; Hayden, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

Once this burden is met, courts must "not ... conduct a detailed inquiry to decide whether [they]

agree[] with the agency's opinions."  Halperin, 629 F.2d at 148.  If the agency's affidavits describe

the withheld information and the justification for withholding with "reasonable specificity,"

demonstrating a logical connection between the information and the claimed exemption," and "if

the affidavits evidence neither bad faith on the part of the agency nor a conflict with the rest of

the record," the agency is entitled to summary judgment.  Id. at 147-48; see also Military Audit

Project, 656 F.2d at 738; Allen v. CIA, 636 F.2d 1287, 1291 (D.C. Cir.1980); Lesar v. United

States Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980).

**E.    Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte."  Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

13

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

III.    **The Defendants' Compliance With Aplicable FOIA Requirements**

Defendants' compliance with FOIA is set forth in the Declaration of Dr. Garrett D.

Polhamus, attached to Defendants' Motion for Summary Judgment as Exhibit 2.

A.    **Defendants Conducted a Thorough Search**

Defendants located possibly responsive material consisting of 471 photos and five

documents. Polhamus Decl. at ¶¶13, 20, 24. The Polhamus declaration describes each of the

systems searched by the Air Force Research Laboratory Radio Frequency Radiation Branch,

("AFRL/HEDR") and the United States Marine Corps Joint Lethal Weapons Directorate

("USMC JNLWD"), including (1) AFLR/HED's network hard drive, (2) working files of

investigators assigned to AFLR/HEDR, (3) paper files at USMC JNLWD, and (4) shared drive

and individual hard drive files maintained by USMC JNLWD. See id. at ¶¶ 9-11, 17, 22. In

addition, the Polhamus Declaration describes the method of searching these files and systems for

responsive information. See id.

The Polhamus Declaration plainly reveals that Defendants thoroughly searched for

documents in response to all three of Plaintiff's requests under FOIA. Personnel of the

AFRL/HEDR and the USMC JNLWD conducted the searches for the material which Plaintiff

identified in his November 26, 2005 and April 24, 2006 FOIA requests. Polhamus Decl. at ¶¶ 9-

11, 22. Historic information relating to the bioeffects of ADS and ADT is stored on a central

network hard drive at AFRL/HED and organized under the user Team ADS. Id. at ¶ 9. The files

under user Team ADS are further subdivided by topic. Id. In addition, photographs stored

14

under user Team ADS are all grouped together, further subdivided by event.  Id.  Lieutenant

Colonel Montgomery and/or Ms. Miller (both of AFRL/HEDR) manually reviewed all files and

photographs under Team ADS to identify documents relating to Mr. Friedman's November 26,

2005 and April 24, 2006 requests.  See Polhamus Decl. at ¶¶ 9, 22.  Current information relating

to the bioeffects of ADS and ADT is kept by individual investigators in working files, all of

which are assigned to AFRL/HEDR.  Id. at ¶ 10.  Lt Col Montgomery and/or Ms. Miller hand

searched these files for documents relating to Plaintiff's November 26, 2005 and April 24, 2006

letters.  Id. at 10, 22.  USMC JNLWD maintains paper files of information relating to the human

effects caused by ADS and ADT.  Id. at ¶ 11.  USMC JNLWD also maintains a shared drive of

information relating to ADS and ADT, with information being stored on computer hard drives

accessible by Maj Pramenko, Dr. Mary Williams and Dr. Bruce Wright.  Id.  Major Pramenko

hand searched the paper files and searched the shared drive and individual hard drives to identify

documents relating to Plaintiff's November 26, 2005 and April 24, 2006 letters. See id. at ¶¶ 11,

22.  There are no other places reasonably likely to contain responsive records.  See id. ¶ 20.

Plaintiff's February 3, 2006 request, regarding ADS and ADT use and/or testing on

animals, also involved a computer directory search by AFRL/HED.  See Polhamus Decl. at 14,

17.  All photographs of ADS and ADT use and/or testing on animals are housed under the

computer directory "Thermal" on the computer server "Shogun" at AFRL/HED.  Id. at 17.  Until

some of these photos were disclosed to Plaintiff on July 24, 2006, none of these photographs had

ever been disclosed, distributed or otherwise disseminated outside of AFRL.  Id. at ¶¶ 17, 20.  Dr.

Polhamus initiated a search of the "Thermal" directory through Ms. Miller, AFRL/HEDR.  Id. at

¶ 17.  Ms Miller viewed every photograph housed under the "Thermal" directory.  Id.

15

Dr. Polhamus' Declaration sets forth the methods employed in the search for responsive documents, is detailed in nature and provides an adequate description of the procedures followed by the Defendants in completing their search.  See Polhamus Decl. at ¶¶ 9-11, 17, 22.  The Declaration shows that in response to each of the three FOIA requests submitted by Plaintiff, Defendants conducted a separate search, tailored to the nature of the records requested, of record systems reasonably likely to contain responsive documents.  See id.  Accordingly, Defendants have conducted a thorough and reasonable search for documents responsive to Plaintiff's FOIA requests.

**B.    Defendants Have Demonstrated That Two Classified Documents Were Properly Withheld in Full**

The Defendants' declaration in this matter was prepared by Dr. Garrett D. Polhamus, Chief of AFRL/HED ("Polhamus Decl.").  Polhamus Decl. ¶ 1.  As Chief of AFRL/HED , Dr. Polhamus is familiar with the procedures followed by the AFRL/HED in responding to requests for information from its files pursuant to the provisions of the FOIA.  Id. ¶ 2.  He is familiar with the procedures followed in responding to the request for responsive records pertaining to Plaintiff, and thus his declaration serves as a more than adequate basis for the Court to ascertain the propriety of the Defendant's response in this action.  See id. ¶ 3.

Dr. Polhamus' Declaration adequately describes the two documents that were withheld in their entirety and why Defendants' withholding is permissible under FOIA.  See Polhamus Decl. at ¶¶ 26, 29.  The declaration, which comprises ten (10) pages, with thirty-six (36)  pages of exhibits, describes with particularity each document by providing, the title of the document, its classification, date of its release, and a synopsis of the document's general subject matter.  See id.

16

at ¶ 29.  Dr. Polhamus' Declaration also contains an overview of the exemption claimed by Defendants as to withheld documents.  Id. at ¶ 26.  This information and descriptions provide a "reasonable basis to evaluate the claim of privilege" as required by Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).   The declaration submitted in support of this motion meets the requirements of Vaughn and its progeny, and demonstrates that defendants thoroughly searched for responsive material and, as explained further below, properly applied Exemption 1 to withhold in full two documents.

## C.    Defendants Properly Withheld Classified Information Pursuant to FOIA Exemption 1

The Defendants properly withheld two documents, in their entirety, under the Exemption 1, 5 U.S.C. § 552(b)(1).  Polhamus Decl. ¶ 26.   The Defendants made their classification decision pursuant to Executive Order 12958, as amended ("E.O. 12958"), which covers the "disclosure of information [which] reasonably could be expected to result in damage to the national security and the original classification authority is able to identify or describe the damage." Executive Order 12958 § 1.2(a)(4).  See Polhamus Decl. ¶ 27.  The Polhamus Declaration fully supports the application of Exemption 1 here, as it "describe[s] the withheld information and the justification for withholding with reasonable specificity" and demonstrates "a logical connection between the information and the claimed exemption."  Goldberg v. Dep't of State, 818 F.2d 71, 77-78 (D.C. Cir. 1987).

Both of the withheld documents constitute classified information owned and controlled by the U.S. government.  Polhamus Decl. at ¶ 27.   The documents withheld under exemption (b)(1) contain information classified under one or more of the following sections of E.O. 12958,:

17

sections 1.5(a) (military plans, weapons systems, or operations), 1.5(e) (scientific, technological, or economic matters relating to national security), and 1.5 (g) (vulnerabilities or capabilities of systems, installations, projects, or plans relating to the national security).  Id.; See also Polhamus Decl. at ¶ 29 (describing the withheld documents).  One document ,"Dosimetry of the Department of Energy, 400-W, 95-GHz Transmitter" concerns " the dosimetry of a 400-W, 95-GHz transmitter that is performed in preparation for human exposure experiments that address the safety and effectiveness of this system as a non-lethal weapon."  The other document, "Effects of 400-W, 95-GHz, Millimeter Wave Energy on Stationary Humans", deals with "the safety and effectiveness of several millimeter wave (MMW), directed energy systems [that] are under investigation by AFRL/HEDR for potential use as non-lethal weapons (NLWs).").

The original classification authority, by virtue of publishing a security classification guide, has determined that the unauthorized disclosure of the withheld documents could reasonably be expected to result in damage to national security.  Polhamus Decl. at ¶ 27; See also Executive Order 12958, Section 1.2 (a) (4).  Although Dr. Polhamus was not the original classification authority, he relied on the determination of the orginal classification authority, Dr. R. Earl Good, SES, DAF, formerly Director, Directed Energy Directorate, Kirtland AFB, NM. Polhamus Decl. at ¶ 27.

In addition to the substantive requirements of E.O. 12958, certain procedural and administrative requirements of E.O. 12958 must be followed before information can be considered to be properly classified, including proper identification and marking of documents. In the instant case, all procedural requirements of E.O. 12958 were followed in order to ensure that the information was properly classified.  See Polhamus Decl. at ¶ 28.  Each withheld

document was marked as required and stamped with the proper classification designation in accordance with Executive Order 12958 Sections 1.7 (a)(1)-(5).  Id.  Also, each document was marked to indicate clearly that each document is classified in its entirety as set forth in Executive Order 12958, Section 1.6.[5]  Id.  The prohibitions and limitations on classification specified in Executive Order 12958 Section 1.8 and the declassification policies set forth in Executive Order 12958 Section 3.2 were followed.  Id.  None of the information contained in the withheld documents can be reasonably segregated and released and/or provided to Mr. Friedman.[6]  Id.

Accordingly, because the documents are in fact properly classified pursuant to the applicable Executive Order, the information is exempt from the mandatory disclosure provisions of the FOIA.  See Salisbury, 690 F.2d at 970-72.  Therefore, this Court should grant the defendants summary judgment.

### D.    Defendants Have Released to Plaintiff All Reasonably Segregable Material

In this case, as is obvious from the description in the Polhamus Declaration, no meaningful portions of the withheld documents could reasonably be released without destroying the integrity of these documents as a whole.  See Polhamus Decl. at ¶ 28; See also Id. at ¶¶ 26, 29 ("There is no discretion regarding the release of properly classified information.  The searches . . . produced two records that were properly classified in accordance with Executive Order No. 12, 958 and remain properly classified. . . .  The withheld documents consist of reports and data files

---

[5]  E.O. 12958 § 1.7(a)(5)(c).

[6]  5 U.S.C. § 552(b) provides in part:  "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

19

relevant to the operation of ADS."). Thus, Defendants complied with their segregation

obligations under <u>Mead Data Central</u>.

## <u>CONCLUSION</u>

The Defendants have complied with the intent of the FOIA, while protecting the interest

of the general public in the efficient and effective performance of its military.  For the reasons

described above, Defendants have properly invoked FOIA exemption 1 with regard to the two

documents requested in Plaintiff's April 24, 2006 letter.  Accordingly, Defendants respectfully

request that the Court grant this motion and enter judgment in their favor.

Dated: August 18, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

**Of Counsel:**
Nicholas Doukas, Capt, USAF
311 HSW/JA
8010 Chennault Path
Brooks City-Base, TX 78235

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2006, I placed a copy of the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE, AND PROPOSED ORDER** in the first-class United States mail, postage prepaid, marked for delivery to:

> DONALD FRIEDMAN
> #200503494
> NAPA County Jail
> 1125 Third Street
> NAPA, California   94559-3015

/s/_____
Jane M. Lyons
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161